## American Homecare Supply Mid-Atlantic LLC v. Gannon

*David R. Fine* and *Amy L. Groff,* for plaintiff.
*Richard S. Bishop,* for defendant.

NEALON, *J.,* December 15, 2009—A respiratory products and medical equipment supplier seeks to preliminarily enjoin its former clinical liaison from continuing her employment with a competing provider based upon the non-competition clause contained in her employment agreement. The employee contends that her restrictive covenant is unenforceable since it was executed after she began her employment with her former employer and was not specifically assigned by that employer's parent company when it sold its regional healthcare division to a new parent company six months prior to her termination of employment.

The non-competition agreement was sufficiently supported by new consideration in that the employee received a promotion and raise in exchange for the covenant not to compete. Furthermore, since the foregoing sale of

the membership interest units of the limited liability company employer was akin to a stock sale rather than an asset sale, the covenant is enforceable by the former employer without the necessity of an express assignment. However, inasmuch as the sole legitimate business interest warranting protection by the non-competition covenant is the customer goodwill that the employee developed and maintained with eight identified referral sources, the scope of the restrictive covenant will be modified to prohibit employment for six months only to the extent that the defendant/employee is barred from any business dealings or contact with those eight accounts. Consequently, the non-competition agreement will be enforced as reformed and the request for preliminary injunctive relief will be granted as modified.

## I. PROCEDURAL HISTORY

On November 25, 2009, plaintiff American Homecare Supply Mid-Atlantic LLC d/b/a Young's Medical Equipment Company filed a complaint against its former employee, defendant Tonya Gannon, and presented a motion in motion court seeking the issuance of a special preliminary injunction enjoining Gannon from working for Cook's Medical Care until such time as a hearing could be conducted. Since the materials submitted for review did not establish (a) whether the May 2009 sale of American Homecare by American Homecare's parent company, Air Products and Chemicals Inc., to Landauer Healthcare Holdings Inc. was an asset sale or a stock sale, or (b) in the event of an asset sale, whether the restrictive covenant in Gannon's "employment agreement" was specifically assigned by Air Products to Landauer,

we denied American Homecare's motion for a special preliminary injunction based upon *Hess v. Gebhard & Co. Inc.,* 570 Pa. 148, 166-67, 808 A.2d 912, 922 (2002). In denying American Homecare's motion, we also scheduled a hearing on American Homecare's request for a preliminary injunction for December 2, 2009.

On that date, testimony was received from Gannon, American Homecare's district sales manager, Wendy Connor, and its account executive/clinical liaison, Edward J. Kaminski, and various exhibits were introduced into evidence. The parties were afforded leave of court to supplement the record with memoranda of law by no later than on December 8, 2009, and upon the filing of those briefs, the motion for a preliminary injunction became ripe for disposition. The factual findings set forth below are based upon the evidence which has been deemed credible and relevant.

## II. FINDINGS OF FACT

(1) American Homecare is engaged in the business of selling respiratory products and supplies and durable medical equipment in Northeastern Pennsylvania and other markets. In 2000, American Homecare acquired Young's Medical Equipment Company and in 2002, Air Products became the parent company of American Homecare. (Transcript of proceedings (T.P.) on 12/2/09, pp. 6, 16, 42-43; stipulation of facts (plaintiff's exhibit no. 1), ¶3.)

(2) Prior to July 2, 2004, Gannon was employed by Apria Healthcare d/b/a Wasserotts which was likewise engaged in the business of selling respiratory products

and supplies and durable medical equipment in Northeastern Pennsylvania. American Homecare recruited Gannon from Apria Healthcare d/b/a Wasserotts to American Homecare effective July 2, 2004. (T.P. 12/2/09, pp. 92, 143.)

(3) From July 2, 2004 through December 6, 2004, Gannon was employed by American Homecare as a customer service representative and was compensated at a rate of $11 per hour or $22,800/year based upon a 40-hour work week. (*Id.*, pp. 8-9.)

(4) On December 6, 2004, Gannon was promoted by American Homecare to the position of clinical liaison at a base salary of $35,000 per year and participation in American Homecare's employee benefit programs. In connection with that promotion, American Homecare and Gannon executed an "employment agreement" on December 6, 2004. (*Id.*, pp. 6, 8-9, 18, 51-52, 95, 97-100; stipulation of facts, ¶¶5-6; plaintiff's exhibit no. 4.)

(5) Section 1.4(b) of the "employment agreement" provides that American Homecare may terminate Gannon's "employment during the employment period for cause or without cause." The employment agreement does not quantify or otherwise identify a specific period of time as the "employment period" for Gannon. However, section 1.4(c) provides that Gannon "may terminate employment by giving [American Homecare] at least 30 days advance written notice of the termination." (Plaintiff's exhibit no. 4, p. 2.)

(6) Article 2 of the employment agreement entitled "confidential information; non-solicitation; non-competition" contains a restrictive covenant with respect to

Gannon's post-termination employment. Under section 2.1(b) of the agreement, Gannon agreed that "in the event that [Gannon] voluntarily terminates her employment, for the six-month period beyond voluntary termination she shall not . . . directly or indirectly . . . be employed or engaged by, or otherwise affiliated or associated with . . . any other corporation, partnership, proprietorship, firm, association or other business entity, or otherwise engage in any business anywhere within 50 miles of the Scranton, PA office which . . . (i) is engaged in by [American Homecare]" or "(ii) is related to any business engaged in by [American Homecare] . . . ." As per section 2.1(e) of the agreement, Gannon acknowledged and agreed "that the restrictions contained in this article 2 are reasonable and necessary to protect and preserve the legitimate interests, properties, goodwill and business of [American Homecare]" and "that [American Homecare] would not have entered into this agreement in the absence of such restrictions." (*Id.*, p. 3.)

(7) In her capacity as a clinical liaison, Gannon operated from American Homecare's office at 1000 Jefferson Avenue, Scranton, and was responsible for developing and maintaining referral source relationships for the sale of American Homecare's respiratory products and supplies and durable medical equipment. During the course of her employment with American Homecare, Gannon was responsible for such referral sources or "identified accounts" at Community Medical Center, Mercy Hospital, Moses Taylor Hospital, Mountain View Care Center, Dr. Nat Levinson, Dr. Greg Cali, Dr. S. Ramakrishna, and Dunmore Health Care Center. (T.P. 12/2/09, pp. 17,

19, 20, 21, 24, 96-97, 103-106; stipulation of facts, ¶7.)

(8) American Homecare funded Gannon's ability to cultivate and preserve referral relationships with the foregoing eight accounts and thereby enabled her to develop customer goodwill in the process. (T.P. 9/2/09, pp. 22-24, 29, 34, 80-82, 89-90.)

(9) On April 15, 2008, American Homecare made a business decision to discontinue certain supplies in its product line, specifically, diabetic, urological and ostomy supplies, bath equipment, and certain pediatric services. (*Id.,* pp. 6, 37-39, 40, 59-64; stipulation of facts, ¶4.)

(10) On April 16, 2009, Air Products' vice-president of human resources forwarded a letter to Gannon advising her that Air Products was "in the process of identifying a new high valued owner for the North American Healthcare Business" and that the continued performance of that business would "have a critical impact on the proceeds we can realize from the divestiture." The correspondence informed Gannon that in an effort "to preserve the services of key employees" of American Homecare's business, Air Products had "decided to provide a special incentive arrangement for a very restricted number of the most affected people in the business, including you." Specifically, in the event that Air Products successfully sold that business prior to December 31, 2009, Gannon was to receive $7,154.17 on "the earlier of one month after closing on any such sale . . . or your termination date," provided that Gannon continued to perform in accordance with American Homecare's Business Operating Plan. (T.P. 12/2/09, pp. 47-50, 130-33; defendant's exhibit no. 1.)

(11) On May 15, 2009, Landauer acquired American Homecare from Air Products pursuant to a "membership interest purchase agreement" dated May 13, 2009 between Landauer Healthcare Holdings Inc., Landauer-Metropolitan Inc., Amhealth Group LLC, American Homecare Supply LLC, and Air Products and Chemicals Inc., with respect to the sale of the membership interests of Genox Homecare LLC and American Homecare Supply Mid-Atlantic LLC. (T.P. 12/2/09, p. 5; stipulation of facts, ¶2; affidavit of Brian M. Hand, exhibit A.)

(12) According to section 2.1 of the membership interest purchase agreement dated May 13, 2009, the consideration provided for Landauer's acquisition of American Homecare was a confidential sum paid to Air Products for the purchase of the American Homecare Supply Mid-Atlantic LLC "units," which are defined by article 1 of the agreement as "100 units issued by [American Homecare Supply Mid-Atlantic LLC] in the name of [American Homecare Supply LLC] representing 100 percent of the issued and outstanding membership interests of [American Homecare Supply Mid-Atlantic LLC]." The phrase "membership interest" is defined by the agreement as meaning "[American Homecare Supply LLC's] membership interest in [American Homecare Supply Mid-Atlantic LLC], constituting ownership of 100 percent of the issued and outstanding equity of [American Homecare Supply Mid-Atlantic LLC] . . . ." Section 2.2.4 of the agreement entitled "allocation of purchase price" states that the "allocation of the purchase price set forth on schedule 2.2.4 shall be controlling for tax purposes and shall be utilized by both parties in preparing Internal Revenue Service Form 8594 pursuant to section 1060(b)

of the Internal Revenue Code and the Treasury Regulations issued thereunder."[1] (Affidavit of Brian M. Hand, exhibit A, pp. 2, 6, 9, 11.)

(13) Article 3 of the membership interest purchase agreement governs "representations and warranties of sellers" with regard to American Homecare. Section 3.17 of the agreement addresses employees of American Homecare and states that "[e]xcept as set forth on schedule 3.17, [American Homecare Supply Mid-Atlantic LLC] is not a party to any written employment agreement with any current employee of [American Homecare Supply Mid-Atlantic LLC]." Schedule 3.17 attached to the · agreement identifies Gannon as an American Homecare employee with a written employment agreement. (*Id.,* pp. 13, 17-18 and schedule 3.17 at p. 3.)

(14) Section 8.1.1 of the membership interest purchase agreement obligates Landauer to continue to employ American Homecare's employees, but with the express caveat that American Homecare Supply Mid-Atlantic LLC "will continue to employ the employees on an at-will basis" and that Landauer "does not guarantee to any employee continuing employment for any definite term." (*Id.,* p. 25.)

(15) The membership interest purchase agreement dated May 13, 2009 does not contain a specific assignment by Air Products or American Homecare of Gannon's restrictive covenant, or any other non-competition agreement executed by any American Homecare em-

---

1. Although American Homecare has produced certain schedules that were attached to the membership interest purchase agreement, it has not provided a copy of schedule 2.2.4.

ployee, to Landauer. In fact, the only reference to a non-competition agreement or restrictive covenant contained in the membership interest purchase agreement concerns a non-competition agreement executed by Air Products as the "seller guarantor" and delivered to Landauer at the time of closing on May 15, 2009.[2] (*Id.,* pp. 6, 13.)

(16) One month after Air Products' sale of American Homecare to Landauer, Gannon received her special incentive payment of $7,154.17, as per the foregoing letter of April 16, 2009. (T.P. 12/2/09, p. 156.)

(17) Prior to Air Products' sale of American Homecare to Landauer, Gannon received a bi-weekly paycheck issued by American Homecare. Subsequent to Air Products' sale of American Homecare to Landauer, Gannon continued to receive a bi-weekly paycheck issued by American Homecare. Additionally, her employment duties and "identified accounts" responsibilities as a clinical liaison for American Homecare remained the same after Landauer's purchase of American Homecare from Air Products. (*Id.,* pp. 83, 88-89, 93, 108-10, 123; defendant's exhibit nos. 2A-2B; plaintiff's exhibit nos. 5-6, 10.)

(18) Following Air Products' sale of American Homecare to Landauer, Gannon experienced a change in her medical coverage, a reduction in her pension plan ben-

---

2. Section 2.4.1(i) and (j) requires American Homecare Supply LLC to deliver to Landauer a "non-competition agreement in the form of exhibit A" and "amendment no. 1 to non-competition agreement in the form attached hereto as exhibit B," both of which were duly executed by Air Products. (*Id.,* p. 13.) Neither the "non-competition agreement" nor "amendment no. 1" have been produced by American Homecare.

efit opportunities in that her employer no longer matched her 401K plan contribution, and a decrease in her mileage expense reimbursement rate. (T.P. 12/2/09, pp. 71-74, 83-84, 154-57.)

(19) In the late summer of 2009, American Homecare's district sales manager, Wendy Connor, confronted Gannon regarding allegations that she was reportedly funneling business to competing providers of respiratory products and supplies and durable medical equipment. Gannon steadfastly denied that accusation and American Homecare's subsequent investigation did not substantiate the allegations. (*Id.,* pp. 65-68, 138.)

(20) On October 12, 2009, Gannon forwarded an email to American Homecare's district sales manager, Wendy Connor, stating "[p]lease accept this as my official letter of resignation" and indicating that Gannon's "last day of work will be November 13, 2009." (*Id.,* pp. 26, 113-14; stipulation of facts, ¶8 and tab "A".)

(21) As of the date of her resignation on October 12, 2009, Gannon had accepted an offer of employment as a clinical liaison with Cook's Medical Care. Cook's is engaged in the business of selling respiratory products and supplies and durable medical equipment, as well as other products and retail operations not offered by American Homecare, and is located at 785 Wyoming Avenue, Kingston, Pennsylvania, which is situated within 50 miles of American Homecare's facility at 1000 Jefferson Avenue, Scranton, Pennsylvania. (T.P. 12/2/09, p. 120; stipulation of facts, ¶¶10-11.)

(22) On October 12, 2009 and November 13, 2009, Wendy Connor reminded Gannon of the restrictive cov-

enant/non-competition clause set forth in section 2.1 of her employment agreement dated December 6, 2004. In addition, during Gannon's exit interview on November 13, 2009, American Homecare provided Gannon with a letter advising her of the covenant not-to-compete contained in her employment agreement barring her from engaging in competitive employment or activities within a 50-mile radius of American Homecare's Scranton office for a period of six months following her termination. (T.P. 12/2/09, pp. 12, 41, 114-15.)

(23) On November 16, 2009, Gannon began her employment as a clinical liaison with Cook's. (*Id.,* pp. 117, 129.)

(24) On November 19, 2009, American Homecare's counsel forwarded a certified letter to Gannon stating that American Homecare had verified that Gannon had "visited two of [American Homecare's] long-standing referral sources" within the restricted territory "for the purpose of soliciting business for [Gannon's] new employer, Cook's Medical Care." American Homecare's counsel further stated that section 2.1 of Gannon's employment agreement prohibited her from engaging in such competitive activities within the restricted territory through May 13, 2010, and Gannon was cautioned "not to seek referrals to patients seeking respiratory equipment and supplies or durable medical equipment from any other of [American Homecare's] referral sources in the restricted territory . . . ." The correspondence of November 19, 2009 advised Gannon that it constituted "the final warning letter that you will receive regarding this matter" and that American Homecare would take legal action if Gannon "commit[ed] any further violation of [her] legal

obligations to [American Homecare]." (*Id.*, p. 116; plaintiff's exhibit no. 8, pp. 1-3.)

(25) Gannon continues to be employed as a clinical liaison with Cook's, and in the course of that employment, she contacts and solicits respiratory products/supplies and durable medical equipment business from the same referral sources and "identified accounts" in Lackawanna County that she serviced during her employment with American Homecare. (T.P. 12/2/09, pp. 117, 126-27; stipulation of facts, ¶9.)

(26) Since the date that Gannon terminated her employment with American Homecare on November 13, 2009, American Homecare has experienced a reduction in clinical liaison referral business in Lackawanna County. (T.P. 12/2/09, pp. 29, 32-34; plaintiff's exhibit no. 7.)

(27) American Homecare did not establish that Gannon acquired any confidential information or trade secrets from American Homecare during her employment, or that Gannon developed any new or extraordinary skills in selling respiratory products/supplies and durable medical equipment as a result of any specialized training by American Homecare. In fact, Gannon had previously acquired that trade knowledge and developed those industry skills by virtue of her prior employment with Apria Healthcare. (T.P. 12/2/09, pp. 22-24, 96-97, 143.)

(28). In the Lackawanna County market, there are several other providers of respiratory products/supplies and durable medical equipment in addition to American Homecare and Cook's. (*Id.*, pp. 39, 43-44, 148-49.)

## III. DISCUSSION

### (A) *Standard of Review*

To establish its right to the issuance of a preliminary injunction, American Homecare must prove that: (1) an injunction is necessary to prevent immediate and irreparable harm which cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it; (3) an injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) its right to relief is clear, *i.e.,* American Homecare is likely to prevail on the merits; (5) the injunction sought is reasonably suited to abate the offending activity; and (6) a preliminary injunction will not adversely affect the public interest. *Pennsylvania Gaming Control Board v. City Council of Philadelphia,* 593 Pa. 241, 277-78, 928 A.2d 1255, 1277 (2007); *Pennsylvania State Education Association v. Commonwealth, Office of Open Records,* 981 A.2d 383, 385 (Pa. Commw. 2009).

Since the harm resulting from the violation of a non-competition agreement is difficult to quantify, "[t]he great weight of modern authority" holds that a party "who has been or will be injured" by the breach of a restrictive covenant "is ordinarily entitled to the equitable remedy of injunction. . . ." *Records Center Inc. v. Comprehensive Management Inc.,* 363 Pa. Super. 79, 86, 525 A.2d 433, 436 (1987). (citation omitted) As the Supreme Court of Pennsylvania has observed, "[i]t is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalcu-

lable damage to the former employer's business that constitutes the justification for equitable intervention." *John G. Bryant Co. Inc. v. Sling Testing and Repair Inc.,* 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977). Thus, "Pennsylvania courts have uniformly recognized that a violation of a non-competition agreement results in harm which is not compensable by money damages." *Zambelli Fireworks Manufacturing Co. Inc. v. Wood,* 2009 WL 159182 at *16 (W.D. Pa. 2009). Governed by this standard of review, we will consider American Homecare's request for preliminary injunctive relief.

## (B) *Restrictive Covenants*

A covenant not to compete is a restrictive covenant relied upon by employers to shield their protectable business interests, *J. C. Ehrlich Co. Inc. v. Martin,* 979 A.2d 862, 864 (Pa. Super. 2009), and "precludes the former employee from competing with his [her] prior employer for a specified period of time and within a precise geographic area." *Hess,* 570 Pa. at 157, 808 A.2d at 917. Although post-employment non-competition agreements are not per se unenforceable, *Wellspan Health v. Bayliss,* 869 A.2d 990, 996 (Pa. Super. 2005), they "are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." *Hess, supra; InterMetro Industries Corp. v. Kent,* 2007 WL 1140637 at *5 (M.D. Pa. 2007). For that reason, covenants not to compete must be strictly construed against the employer. *All-Pak Inc. v. Johnston,* 694 A.2d 347, 351 (Pa. Super. 1997); *Citadel Broadcasting Co. v. Gratz,* 52 D.&C.4th 534, 545 (Lacka. Cty. 2001).

Non-competition covenants are enforceable under Pennsylvania law if: (1) the restrictive covenant is incident to an employment relationship between the parties; (2) the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and (3) the restrictions imposed are reasonably limited in duration and geographic scope. See *Hess, supra; J. C. Ehrlich Co., supra; Citadel Broadcasting,* 52 D.&C.4th at 544-45. During the evidentiary hearing on December 2, 2009, Gannon suggested that the non-competition clause at issue is not enforceable inasmuch as it was executed subsequent to her commencement of employment with American Homecare. In her post-hearing brief, Gannon advances two reasons why her covenant not to compete ostensibly does not prohibit her current employment with Cook's: (1) the covenant was not specifically assigned by Air Products to Landauer as part of the sale of American Homecare; and (2) the six-month period subject to Gannon's restrictive covenant elapsed on November 15, 2009 (*i.e.,* six months following the Air Products-Landauer closing).

American Homecare submits that the non-competition agreement is valid even though it was signed by Gannon after she began her employment since it was supported by new consideration. American Homecare further posits that an assignment of Gannon's restrictive covenant would have been required only in the event of an asset sale. Since the Air Products-Landauer transaction involved a transfer of equity interests via the membership interest purchase agreement, American Homecare maintains that an express assignment was unnecessary. Arguing that it has satisfied the criteria for the grant of injunc-

tive relief, American Homecare requests the issuance of a preliminary injunction barring Gannon from employment with Cook's for a period of six months. We will consider the parties' arguments seriatim.

### (C) *Supporting Consideration*

To be effective, the non-competition covenant must be incident to an employment relationship and supported by adequate compensation. See *Sidco Paper Company v. Aaron,* 465 Pa. 586, 591, 351 A.2d 250, 252 (1976). If a covenant not to compete is executed at the inception of employment, the consideration supporting the covenant is the job itself. See *e.g., Barb-Lee Mobile Frame Company v. Hoot,* 416 Pa. 222, 225-26, 206 A.2d 59, 61 (1965). However, when an employee enters into a non-competition agreement subsequent to the commencement of employment, the restrictive covenant must be supported by new consideration in order to be enforceable. *Maintenance Specialties Inc. v. Gottus,* 455 Pa. 327, 330, 314 A.2d 279, 280 (1974); *Davis & Warde Inc. v. Tripodi,* 420 Pa. Super. 450, 455, 616 A.2d 1384, 1387 (1992), *appeal denied,* 536 Pa. 624, 637 A.2d 284 (1993). Such new consideration must be in the form of some corresponding benefit to the employee or favorable change in employment status, *Ruffing v. 84 Lumber Company,* 410 Pa. Super. 459, 466, 600 A.2d 545, 548 (1991), *appeal denied,* 530 Pa. 666, 610 A.2d 46 (1992), as in the case of a promotion, see *Records Center Inc.,* 363 Pa. Super. at 85, 525 A.2d at 435-36, or an increase in pay. See *Zambelli Fireworks, supra* at *11; *Citadel Broadcasting,* 52 D.&C.4th at 546.

Gannon did not sign her employment agreement and accompanying non-competition provision until more than five months after she began her employment with American Homecare. Nevertheless, at the time that she executed her restrictive covenant, she was promoted from a customer service representative to a clinical liaison and received a raise of more than $12,000/year. (See findings of fact nos. 3-4, *supra.*) Therefore, she received a reciprocal benefit in exchange for her non-competition agreement, as a result of which her covenant not to compete is supported by sufficient consideration to be deemed valid.

### (D) *Assignability of Restrictive Covenant*

Gannon contends that Air Products' sale of American Homecare to Landauer was an "asset sale" and that the non-competition agreement is unenforceable against Gannon since it was not specifically assigned by Air Products to Landauer. (Defendant's brief in opposition, pp. 5-8.) Gannon premises her argument upon the fact that the Air Products-Landauer membership interest purchase agreement references the preparation of IRS Form 8594 which is entitled "asset acquisition statement under section 1060." (*Id.,* pp. 13-14.) Alternatively, Gannon asserts that since Landauer altered the benefits package offered to American Homecare's employees following the sale by Air Products, the six-month restriction set forth in Gannon's non-competition agreement began to run at the time of the Air Products-Landauer closing on May 15, 2009. Applying this logic, Gannon alleges that the restricted period elapsed on November 15, 2009,

such that she was at liberty to begin employment with Cook's on November 16, 2009. (*Id.,* pp. 8-10.)

In *Hess,* the Supreme Court addressed, as a matter of first impression, whether an asset purchaser could enforce a non-competition covenant executed by an asset seller and its former employee in the absence of an express assignment of the restrictive covenant as part of the asset sale. Resolving that issue in the context of an asset sale, the *Hess* court held "that a restrictive covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets." *Hess,* 570 Pa. at 166-67, 808 A.2d at 922. More recently, the Superior Court of Pennsylvania and a federal district court both distinguished *Hess* and concluded that a non-competition agreement is enforceable, and an express assignment unnecessary, if the business transaction at issue involved a stock sale rather than an asset sale. See *J. C. Ehrlich Co.,* 979 A.2d at 865-66; *Zambelli Fireworks, supra* at *12-13. Accord, *Siemens Medical Solutions Health Services Corp. v. Carmelengo,* 167 F. Supp.2d 752, 757-59 (E.D. Pa. 2001) (purchasing company's acquisition of employer's stock and subsequent change in name of corporation did not constitute a de facto change in employer with the result allegedly being that employee was no longer bound by restrictive covenant in his employment agreement).

American Homecare maintains that the sale of its membership interest by one parent company (Air Products) to another parent company (Landauer) was tanta-

mount to a stock sale or equity interest transfer rather than an asset sale. (Plaintiff's brief in support, pp. 14-18.) To that end, American Homecare notes that both before and after the Air Products-Landauer transaction on May 15, 2009, Gannon performed the same job (clinical liaison) for the same employer (American Homecare) with the same supervisor (Wendy Connor) at the same location (1000 Jefferson Avenue) servicing the same eight "identified accounts." (*Id.,* pp. 17-18.) American Homecare posits that an assignment was unnecessary since American Homecare was the limited liability company (LLC) that (1) employed Gannon from 7/2/04 to 11/13/09, (2) entered into the non-competition agreement with Gannon, (3) continues to exist as an entity with the legal capacity to sue in its own name under 15 Pa.C.S. §8991, and (4) is the named party seeking to enforce the restrictive covenant against its former employee. (*Id.,* pp. 13-14.)

We agree with American Homecare that it may seek to enforce its non-competition agreement with Gannon notwithstanding the absence of an express assignment of that restrictive covenant from Air Products to Landauer. The evidence presented during the injunction hearing established that the Air Products-Landauer transaction did not constitute an asset sale that would be governed by Hess. Landauer's purchase of the "membership interest" units of American Homecare was synonymous to a stock sale rather than an asset sale.[3] In *Ehrlich Company,*

---

3. The membership interest purchase agreement's single reference to the allocation of the purchase price for purposes of IRS Form 8594 is of no consequence. Section 1060 of the Internal Revenue Code, 26 U.S.C., prescribes the use of Form 8594 for determining the tax treat-

*supra,* an assignment was deemed unnecessary after Ehrlich Company consolidated with Rentokil Inc. since "[the employee] continued to earn paychecks from Ehrlich after this merger," he "began his employment with and remained an employee of Ehrlich from the initial agreement . . . until the time of his termination . . . and the record d[id] not indicate, that his obligations and duties changed in any material respect" after the stock transaction. *Ehrlich Company,* 979 A.2d at 864, 866. The *Zambelli Fireworks* court similarly reasoned that there was no need for an assignment of a former employee's restrictive covenant following a stock transaction which changed the company from a family-run business to an entity with new officers and directors since "the Zambelli corporation that existed before the stock purchase and the Zambelli corporation that exist[ed] after the stock purchase transaction [we]re one and the same corporation." *Zambelli Fireworks, supra* at *12.

In the case at hand, Gannon likewise was an employee of American Homecare when she originally commenced her employment and later signed the non-competition agreement, as well as at the time that she subsequently terminated her employment. Following the

---

ment of gains or losses on certain asset acquisitions, including transactions governed by 26 U.S.C. §338(b)(5) which allows for gains or losses from certain stock purchases to be treated for tax purposes as though the stock transaction was an asset acquisition. Question no. 6 on Form 8594 reflects that fact in that it seeks information concerning "the purchase of the group of assets (or stock) . . . ." The mere reference to IRS Form 8594 in the membership interest purchase agreement did not transform that membership interest units transaction into an asset sale.

Air Products-Landauer transaction, she continued to have the same job responsibilities and title in the same geographic market and still received a paycheck issued by American Homecare. As a limited liability company which remains in existence, American Homecare alone has the legal capacity to enforce Gannon's covenant not to compete.

Gannon's reliance upon *Joyner Sports Medicine Institute Inc. v. Stejbach,* 45 D.&C.4th 242 (Dauph. Cty. 1999), *aff'd,* 769 A.2d 1215 (Pa. Super. 2000) does not dictate a contrary result. In *Joyner,* Stejbach was employed as a physical therapist pursuant to an employment contract with Joyner which contained a non-competition clause. Nova Care Inc. later acquired 100 percent of the stock of Joyner and unilaterally reduced Stejbach's benefits package and discontinued his receipt of merit-based salary increases. Following Nova Care's acquisition of Joyner, Stejbach received paychecks and W-2 forms issued by Nova Care instead of Joyner. After Stejbach terminated his employment and joined another physical therapy group located within the proscribed geographic region, Joyner sought to enjoin Stejbach from working for its competitor based upon the restrictive covenant. *Id.* at 245-46.

Joyner asserted that the enforcement of the covenant not to compete "hinge[d] upon the difference between a stock acquisition and an asset purchase agreement" and argued that no assignment was necessary in that all employee contracts were acquired by Nova Care as a result of the stock transaction. *Id.* at 247. The Dauphin County court disagreed and characterized the stock sale vs.

asset sale argument "as a distinction without a difference." *Id.* at 249. Noting that Stejbach's paychecks and W-2 forms were issued by Nova Care following the stock sale, the *Joyner* court reasoned that the employment relationship between Stejbach and Joyner "was effectively terminated on . . . the date of the acquisition" such that the restricted period of employment contained in the non-competition agreement became operative as of the date of the Joyner-Nova Care sale. *Id.* at 250-51.

Gannon's assignability argument predicated upon *Joyner* is misplaced. Although *Joyner* deemed the stock sale/asset sale distinction to be wholly irrelevant, the Superior Court in *J. C. Ehrlich Co.* subsequently found that distinction to be dispositive with respect to the enforceability of a non-compete clause in the absence of an assignment. See *J. C. Ehrlich Co.,* 979 A.2d at 866. See also, *Siemens Medical Solutions,* 167 F. Supp.2d at 759-60 (discussing validity of restrictive covenant following employer's stock sale and holding that "[t]o the extent that this determination conflicts with the decision of the court in *Joyner,* I conclude that the Supreme Court of Pennsylvania would decline to follow that court's reasoning."). Furthermore, in contrast to the employee in *Joyner,* Gannon continued to receive paychecks from American Homecare after the Air Products-Landauer transaction and did not experience a unilateral decrease in her salary. While Gannon's benefits package was altered somewhat following the membership interest transaction, she remained employed by American Homecare with the same job duties involving the same "identified accounts" in the identical Lackawanna County market. See *Siemens Medical Solutions,* 167 F. Supp.2d

at 759 ("Despite some differences with respect to particular benefits, I find nothing significant enough to conclude that [the former employee] no longer worked for the entity with whom he signed his original agreement."). For all these reasons, *Joyner* is factually and legally distinguishable, and American Homecare may seek to enforce Gannon's restrictive covenant following Landauer's purchase of the membership interest units which represented American Homecare's outstanding equity interest.

### (E) *Protectable Business Interest*

Pennsylvania law "permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer's protectable business interests." *Hess,* 570 Pa. at 162, 808 A.2d at 920. (citation omitted) Hence, "[t]he presence of a legitimate, protectable business interest of the employer is a threshold requirement for an enforceable non-competition covenant." *Wellspan Health,* 869 A.2d at 997. Generally, legitimate business interests that can be protected through restrictive covenants include trade secrets or confidential proprietary information, customer goodwill, and unique or extraordinary skills developed through specialized training. *Hess,* 570 Pa. at 163, 808 A.2d at 920; *Wellspan Health,* 869 A.2d at 996-97. Customer goodwill is considered a protectable interest even when the goodwill has been acquired through the efforts of the employee. *Sidco Paper,* 465 Pa. at 591, 351 A.2d at 252-53. Decisional precedent in this Commonwealth recognizes a patient referral base and the investments required to develop such a base as protected

interests. See *Wellspan Health,* 869 A.2d at 998-99 (adopting rationale set forth in *Community Hospital Group v. More,* 365 N.J. Super. 84, 838 A.2d 472 (2003)).

The credible evidence established that American Homecare funded Gannon's development and maintenance of customer goodwill with the eight referral sources/identified accounts that she serviced in Lackawanna County. (See findings of fact nos. 7-8, *supra.*) However, American Homecare did not prove that Gannon acquired any trade secrets or confidential proprietary information, or developed any unique or extraordinary skills from specialized training programs, during her employment with American Homecare. *Compare, Pennsylvania Funds Corporation v. Vogel,* 399 Pa. 1, 7-8, 159 A.2d 472, 475-76 (1960) (securities salesman received extensive, specialized training from employer regarding particular methods and problems in the sale of mutual fund shares). To the contrary, Gannon gained that industry knowledge and skill as a result of her earlier employment with Apria Healthcare. (See finding of fact no. 27, *supra.*) See also, *Wellspan Health,* 869 A.2d at 997 (trade secret does not include employee's aptitude, skill, mental ability or subjective knowledge, and industry information obtained from other legitimate means does not constitute confidential information). Therefore, American Homecare possesses a legitimate, protectable interest only to the extent of the customer goodwill that Gannon developed with regard to the eight referral sources/identified accounts that she serviced in Lackawanna County while she was employed by American Homecare.

(F) *Balancing of Competing Interests*

Gannon's non-competition covenant with American Homecare bars her from any form of employment with any employer engaged in the business of selling respiratory products/supplies and durable medical equipment within 50 miles of Scranton for a period of six months following her termination. In those instances where a non-competition agreement imposes restrictions that are broader than necessary to protect the former employer's interests, the Supreme Court has "repeatedly held that a court of equity may grant enforcement limited to those portions of the restrictions that are reasonably necessary for the protection of the employer." *Hess,* 570 Pa. at 162-63, 808 A.2d at 920; *Sidco Paper Company,* 465 Pa. at 595, 351 A.2d at 254. Accord, *Victaulic Company v. Tieman,* 499 F.3d 227, 235 (3d Cir. 2007) ("To be reasonably necessary for the protection of the employer, a covenant must be tailored to protect legitimate interests."). In making that determination, the reviewing court must balance "the employer's protectable business interests against the interest of the employee in earning a living in his or her chosen profession, trade or occupation," and thereafter balance those competing interests "against the interest of the public." *Hess,* 570 Pa. at 164, 808 A.2d at 920; *J. C. Ehrlich Co.,* 979 A.2d at 864-65. Thus, post-employment restrictive covenants are subject to a more stringent test of reasonableness than covenants not to compete which are ancillary to the sale of a business. See *Hess, supra; Thermo-Guard Inc. v. Cochran,* 408 Pa. Super. 54, 65, 596 A.2d 188, 194 (1991); *Citadel Broadcasting,* 52 D.&C.4th at 545. The determination

of reasonableness is a factual one with the party claiming unreasonableness as a defense against enforcement of the covenant bearing the burden of proof. *Wellspan Health,* 869 A.2d at 999.

The six-month restriction set forth in Gannon's non-competition agreement represents a reasonable duration of time for the protection of American Homecare's cognizable business interest in customer goodwill. See *Boldt Machinery & Tools Inc. v. Wallace,* 469 Pa. 504, 513, 366 A.2d 902, 907 (1976) (quoting Blake, "Employee Covenants Not to Compete," 73 Harv. L. Rev. 625, 677-78 (1960) and stating that "[c]ourts seldom criticize restraints of six months or a year on the grounds of duration as such, and even longer restraints are often enforced."). However, American Homecare's blanket prohibition against any means of employment with a competing respiratory products/durable medical equipment provider within 50 miles of Scranton is overly broad in light of American Homecare's sole legitimate, protectable interest in the customer goodwill created relative to the eight referral sources/identified accounts serviced by Gannon during her employment with American Homecare. As part of our "broad powers to modify the restrictions imposed on the former employee to include only those restrictions reasonably necessary to protect the employer," *All-Pak Inc.,* 694 A.2d at 350-51 (citation omitted), we may reform or "blue pencil" the covenant by removing offensive portions or supplying new, limiting language and thereafter enforcing the covenant as reformed. See *Thermo-Guard Inc.,* 408 Pa. Super. at 65 n.9, 596 A.2d at 194 n.9; *Zambelli Fireworks, supra* at

*10; *Hillard v. Medtronic Inc.,* 910 F. Supp. 173, 177 (M.D. Pa. 1995) (Nealon J.).

In order to ensure enforcement of only those restrictions which are reasonably necessary for the protection of American Homecare's valid business interests, Gannon's non-competition agreement will be reformed so as to limit Gannon's proscriptive employment with Cook's to any contact or business dealings with Community Medical Center, Mercy Hospital, Moses Taylor Hospital, Mountain View Care Center, Dr. Nat Levinson, Dr. Greg Cali, Dr. S. Ramakrishna, and Dunmore Health Care Center for a period of six months. See *Wellspan Health,* 869 A.2d at 1002 (finding non-competition covenant reasonable as to York and Adams counties, but unreasonable with respect to Lancaster County); *Thermo-Guard Inc.,* 408 Pa. Super. at 65, 596 A.2d at 194 (to protect former employer's interest in customer goodwill developed by former employees, limited injunction was issued prohibiting employees "from contacting or developing any relationship with any of Thermo-Guard's present customers or prospective customers who became known to [the employees] through their employment with Thermo-Guard."); *Zambelli Fireworks, supra* at *16 (employee enjoined only "from contacting or developing any business relationship with any of Zambelli's present or prospective customers who had contact with or became known to [employee] through his employment with Zambelli for the two-year restrictive time period."); *Hillard,* 910 F. Supp. at 176 (former employee "is not prohibited from competing 'in any manner' with Medtronic, he is restricted only from involvement with certain

products on which he worked within the prior two-year period when he was employed by Medtronic."). Gannon is not foreclosed from employment as a clinical liaison with Cook's within 50 miles of Scranton, provided that she does not contact or engage in any business dealings with any of the eight referral sources/identified accounts that she handled while employed with American Homecare. Our modified prohibition adequately protects American Homecare's genuine interest in customer goodwill while simultaneously respecting Gannon's right to earn a living in her chosen field.

American Homecare has satisfied the six criteria for the issuance of a preliminary injunction as reformed above. Accordingly, Gannon's non-competition covenant will be enforced as modified and a preliminary injunction will be granted enjoining her from employment with Cook's, but only to the extent that she is precluded from any business contact or relations with the foregoing eight referral sources/identified accounts.[4] Gannon is barred

---

4. Since the uncontroverted evidence established that there are multiple providers of respiratory products/supplies and durable medical equipment which service Lackawanna County, the local demand for respiratory products and durable medical equipment does not exceed the available supply of those materials, and the public interest does not prevent the limited enforcement of Gannon's restrictive covenant as modified. Compare *Wellspan Health,* 869 A.2d at 1002 ("The public interest strongly militates against enforcement of [perinatologist's] covenant in Lancaster County" as the "[u]ndisputed evidence indicated that the area was underserved in the area of maternal fetal medicine.") and *West Penn Specialty MSO Inc. v. Nolan,* 737 A.2d 295, 300-301 (Pa. Super. 1999) (analyzing "quantitative sufficiency of physicians practicing in the restricted area" as part of the public interest analysis, and granting preliminary injunction against oncologist after finding no shortage of oncology services due to presence of numerous oncologists in that area).

from any such employment until May 13, 2010 since the language of her non-competition agreement clearly precludes any such employment "for the six-month period beyond [her] voluntary termination" on November 13, 2009. See *Boldt Machinery,* 469 Pa. at 515 n.8, 366 A.2d at 908 n.8 (remanding equity decree for enforcement of restrictive covenant from date of employment termination, rather than date of decree); *Geisinger Clinic v. Di Cuccio,* 414 Pa. Super. 85, 96, 606 A.2d 509, 515 (1992) ("the language of the restrictive covenant in this case is patently clear that the two-year bar takes effect *only after* the employment agreement has been terminated."), *appeal denied,* 536 Pa. 625, 637 A.2d 285 (1993), *cert. denied,* 513 U.S. 1112 (1995). Finally, pursuant to Pa. R.C.P. 1531(b), American Homecare will be required to post a bond in the amount of $17,500 as a condition to the issuance of a preliminary injunction. See *Christo v. Tuscany Inc.,* 368 Pa. Super. 9, 20, 533 A.2d 461, 467 (1987) (amount of bond posted for issuance of an injunction is designed to cover reasonably foreseeable damages resulting from an improperly granted injunction), *appeal discontinued,* 520 Pa. 601, 553 A.2d 964 (1988).

## ORDER

And now, December 15, 2009, upon consideration of the motion of plaintiff American Homecare Supply Mid-Atlantic LLC d/b/a Young's Medical Equipment Company for a preliminary injunction enjoining defendant Tonya Gannon from employment with Cook's Medical Care for a period of six months, the credible evidence

submitted during the injunction hearing on December 2, 2009, and the legal arguments set forth in the parties' post-hearing briefs filed on December 8, 2009, and based upon the factual findings and legal conclusions set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Plaintiff's motion for a preliminary injunction is granted in part and denied in part;

(2) Plaintiff's motion for a preliminary injunction is granted to the extent that defendant Tonya Gannon is precluded from engaging in any business-related contact or dealings with Community Medical Center, Mercy Hospital, Moses Taylor Hospital, Mountain View Care Center, Dr. Nat Levinson, Dr. Greg Cali, Dr. S. Rama-krishna, and Dunmore Health Care Center, or any representative thereof, regarding the sale or use of respiratory products and supplies and durable medical equipment through May 13, 2010;

(3) In all other respects, plaintiff's motion for a preliminary injunction is denied; and

(4) In accordance with Pa.R.C.P. 1531(b), the plaintiff shall file a bond in the amount of $17,500, naming the Commonwealth as obligee, conditioned that if the foregoing preliminary injunction is dissolved as improperly granted, the plaintiff shall pay all foreseeable damages proximately caused by reason of the granting of the preliminary injunction, and all legally taxable costs and fees.